DANIEL M. RUSSELL, QUI TAM, v. PATRICK CONE, APELLANT.*

*Cattle, &c., Running at Large in the Highway. Gen. Sts. ch. 100, § 29.*

The defendant, on several occasions, rode his horse from his house, along the highway, mostly off his own premises, through a village and over two railroad crossings at grade, to a distance of more than a mile and a half, and then fastened the reins to a surcingle around the horse, so that it could not feed, and left it to go back home alone, and went on himself about half a mile further, and out of sight of the horse, to work. The horse was kind, and would, when thus left, go directly home. On the several occasions aforesaid, the defendant left his son, a boy of ten or eleven years, at home, with directions to take care of the horse when it came back; and on each of said occasions, the horse went back along the road directly towards the defendant's premises, until it came to where the boy was waiting for it near said premises, when the boy took care of it. *Held,* that if the defendant or his son kept all the time so near the horse that, owing to its training, it would not wander about the highway when thus left, and would, and did, on said occasions, go directly back to the defendant's premises, or to his son, it was not running at large within the meaning of §29, ch. 100, of the Gen. Sts.

THIS was an action brought upon § 29, ch. 100, of the Gen. Sts., to recover the penalty thereby imposed for suffering neat cattle, &c., to run at large in the public highway. Plea, not guilty, and trial by jury, WHEELER, J., presiding.

Upon the trial, the plaintiff introduced evidence tending to show that the defendant suffered his cattle to go at large in the highway, contrary to the provisions of said statute, and also tending to show that the defendant on several occasions within the time covered by the declaration, took his horse and rode it from his house, situated on the highway in Bennington, about half a mile north-west of Bennington Center village, along the highway eastwardly and southwardly through that village, and over two rail-

---

* This case was decided at the February term, 1873.

road crossings at grade, toward the east village of Bennington, to the watering trough near the residence of A. P. Lyman, about a half mile east of Bennington Center village, a total distance of more than a mile and a half, nearly the whole of the way off the premises of the defendant, and that he left the horse there to find the way and go back alone over the highway and railroad crossings mentioned, to his premises; and that the defendant, without returning to the horse again, or exercising any further control over it, went to the railroad depot, about a half mile further east, and out of sight of the horse, to his work on a railroad gravel train. The defendant introduced evidence tending to show that he did not suffer his cattle to go at large contrary to the provisions of said statute; and also, against seasonable objection by the plaintiff, that his horse was kind in every place, and would always, when left to do so, go directly home; and also, that on the occasions when he rode it from home as the plaintiff's evidence tended to show, he left his son, then between ten and eleven years old, at home, and directed him to take care of the horse when it came back; that he rode the horse upon a blanket or coat folded and strapped to its back with a surcingle, and that before leaving the horse to go back home, he fastened the reins to the surcingle, so that the horse could not put its head down to eat grass, and that the horse did on each occasion go directly along the road, back towards the premises of the defendant, until it was met by the defendant's son near his premises, where his son waited to meet it, and that his son then, on each occasion, took care of it.

The plaintiff requested the court to hold and instruct the jury, that such leaving of the horse by the defendant, to find the way and go back home alone in the highway, was suffering the horse to run at large in the highway, contrary to the provisions of said statute. The court declined to so hold, and upon this part of the case, instructed the jury, that if the horse, after the defendant left it to go back home, was out of the control of either him or his son, and moving about in the highway at liberty to follow its own instincts and inclinations, and to go wherever it would, it was running at large, within the meaning of the statute; but that if the defendant or his son kept all the time so near to the horse

that, owing to its training, it would not wander about the highway, and would and did go directly back to the defendant's son, or to his premises, while it was so on the way back it was not running at large in the highway contrary to the provisions of that statute. To the admission of the evidence objected to, and to the refusal to hold and charge as requested, and to the charge as stated, the plaintiff excepted. Verdict for the defendant.

*G. W. Harman,* for the plaintiff.

The evidence as to the disposition of the horse, was immaterial, impertinent, and irrelevant, and should have been excluded ; and having been received against the plaintiff's objection, the judgment, for that error, should be reversed.

The evidence of the horse's propensity, was not the statement of a fact within the witness's knowledge, but an inference of the witness, and as it was objected to, the admission of it was error.

The instructions to the jury asked for by the plaintiff, were just and proper, and precisely what the case called for. Whenever a person having the control of an object, whether rational or brute, animate or inanimate, withdraws all control of it, he is chargeable with the consequences. *Adams* v. *Nichols,* 1 Aik. 316.

The charge as given was erroneous. That part which speaks of the defendant's or his son's keeping near the horse, was calculated to mislead the jury, and, moreover, was not based upon the evidence. That part which speaks of the " training," was also calculated to mislead the jury, and there was no evidence of any " training." The father and son were two miles apart, and the horse was between them. It was error to intimate to the jury, that under these circumstances, the horse was subject to the control of either. With all the training possible, the horse was still the master of its own movement. It could go where it pleased. The occurrence of anything unusual might have frightened it from its propriety. It was, under any circumstances, liable to frighten women and children. It was liable to remain upon the railroad crossings, to the destruction of property and life, and therefore, it was running at large, contrary to the statute.

*T. Sibley* and *A. B. Gardner*, for the defendant.

This statute must be construed strictly, giving full effect to its language. Every clause and word of a statute, shall be presumed to have been intended to have some force and effect. *Opinion of the Justices*, 22 Pick. 571 *et. seq.; Adams* v. *Nichols*, 1 Aik. 316. This statute must be so construed as to give force and effect to the word, " suffer," and the words, " wilfully committed." In the interpretation of statutes, the natural import of the words, according to the common use of them when applied to the subject-matter of the act, is to be considered as expressing the intention of the legislature. *Opinion of the Justices*, 7 Mass. 523. The word *suffer* has received judicial construction in this state. *Adams* v. *Nichols*, *supra ; Selleck* v. *Selleck*, 19 Conn. 501. *Wilfully*, means by design, with set purpose. *At large*, means without restraint or confinement.

From the facts stated in the bill of exceptions, it is claimed that under a just interpretation of said statute, no offence has been committed by the defendant. The only grounds of error are as to the admission of the evidence objected to, as detailed in the exceptions, and as to the charge of the court, in not charging as requested, and to the charge as made. There was no error in the admission of the evidence. It was admissible, to show that the horse was not at large within the meaning of the statute, and to show that there was no purpose or design on the part of the defendant, to suffer the horse to run *at large* in the highway.

The intention of the defendant in leaving his horse in the highway, is material, and must be found by the jury. *Brooks* v. *Clayes & Morse*, 10 Vt. 37. All the acts of the defendant in connection with his leaving the horse in the highway, and the character of the horse, are material on the question of intent.

There was no error in the refusal of the court to charge as requested ; because it was a question for the jury to find from the evidence, whether the horse was *at large* in the highway within the meaning of the statute, and if so, whether he was so *at large* by the design of the defendant.

There is no error in the charge as made ; and it is more favorable to the plaintiff than the law or the facts would seem to warrant.

The opinion of the court was delivered by

PECK, J.  The action is to recover the penalty imposed by § 29 of ch. 100, Gen. Sts., which provides that, " any person who shall suffer any neat cattle, horses, sheep, or hogs, to run at large in the public highway, except on his own premises, shall, for every such offence wilfully committed, forfeit and pay a fine of not less than one dollar, nor more than five dollars, to be recovered in an action founded on this statute," half to be paid to the town where the animals are found running at large, and half to the prosecutor. The question reserved is, whether the court, in view of the evidence in the case, charged the jury properly as to what constituted a running at large of the defendant's horse in the highway, within the meaning of the statute, and ruled correctly in admitting the evidence on the part of the defendant on that part of the the case.  If there was no error in the charge excepted to, the evidence was admissible, as it was that evidence that raised the point excepted to in the charge.  The instruction of the court to the jury, that if the horse, after the defendant left it to go back home, was out of control of him and his son, and running about in the highway, at liberty to follow its own instincts and inclinations, and to go wherever it would, it was running at large within the meaning of the statute, is, as a general proposition, correct, and as favorable to the plaintiff as he was entitled to, unless in view of the evidence, he had a right to ask some more specific instruction.  The plaintiff's request to charge that " such leaving of the horse by the defendant to find the way and go back home alone in the highway, was suffering the horse to run at large in the highway contrary to the provisions of the statute," evidently had reference to the facts the defendant's evidence tended to prove ; but whether it had exclusive reference to that or not, the plaintiff was not entitled to such charge, as there was evidence tending to show that the horse was not running at large.  Such was the tendency of the evidence on the part of the defence. Running at large, is used in the statute in the sense of strolling without restraint or confinement ; as wandering, roving, or rambling at will, unrestrained.  Perhaps no precise abstract rule under the statute can be laid down, applicable to every case, as

to the nature, character, and amount of restraint necessary to be exercised over a domestic animal, when suffered, as in this case, to be on the highway incident to its use. But the restraint need not be entirely physical ; it may depend much upon the training, habits, and instincts of the animal in the particular case ; and the sufficiency of the restraint is to be determined more from its effect upon, and controlling and restraining influence over, the animal, than from the nature or kind. Suppose a span of horses be so accustomed to be kept and driven together, that while the owner is riding one, the other will voluntarily follow as closely almost as if led by a halter ; the owner while taking them along the highway in this manner, could not be said to suffer the horse so voluntarily following its mate, to run at large in violation of the statute. The same may be said of a young sucking colt upon the highway, with no restraint other than instinct to follow its dam, which is being driven in a carriage on the highway. It was formerly a practice, to some extent, while the statute allowed it, for persons to suffer their cattle to run at large in the highway, for the purpose of grazing ; and probably one of the leading objects of the statute in question, was, to put an end to that practice. The statute, however, in its construction, is not to be limited to animals running at large in the highway for the particular *purpose* of grazing ; but the manner in which animals were formerly accustomed to run at large under that practice, may not be an inapt illustration of the general idea intended to be conveyed by the words in the statute, " *to run at large in the public highway.*" Whether it was prudent for the defendant to risk his horse thus to return home ; whether he would have been liable in case of accidental injury to others by means of the horse ; whether there was not danger that the horse would break loose from his fastening, and instead of going directly home, stray away and run at large,— are questions not decisive of the question involved ; the question is, *did* the horse run at large in the public highway. The horse, under the supervision, care, and restraint, going directly home, as the evidence on the part of the defendant tended to show, and as the jury under the charge must have found, was not suffered to run at large within the meaning of the statute imposing the pen-

alty sought to be recovered.   We find no error in the admission of the evidence, nor in the refusal to charge as the plaintiff requested, nor in the charge to which exception was taken ; and the judgment is affirmed.